# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY AND JENNIE PUNCH, as Parents and Natural Guardians of Lincoln Punch, a minor, and in their own right,<br>      Plaintiffs<br><br>v.<br><br>DOLLAR TREE STORES, INC.,<br>      Defendant/Third Party Plaintiff,<br><br>v.<br><br>DOLLAR CONNECTION, LTD.,<br>      Third Party Defendant. | Civil Action No. 12-154 Erie<br><br>District Judge Bissoon<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Third Party Defendant's [partial] motion to dismiss Plaintiffs' First Amended Third Party Complaint [ECF No. 91], be denied.

### II.    REPORT

#### A.    Relevant Procedural and Factual History

Plaintiffs Tony and Jennie Punch, as parents and natural guardians of Lincoln Punch, a minor ("Minor Plaintiff"), and in their own right, initiated this civil action against Defendant Dollar Tree Stores, Inc. ("Dollar Tree"), to recover damages for injuries suffered by the Minor Plaintiff after he ingested button batteries that were allegedly contained in a pair of lighted tweezers ("subject tweezers") allegedly purchased from one of Dollar Tree's retail stores. In

1

particular, Plaintiffs claim that the subject tweezers "were dangerous and defective in that they contained button batteries, they failed to restrict access to the button batteries, failed to contain appropriate warnings or instructions, and failed to adequately protect and hold the button batteries." (ECF No. 12, First Amended Complaint, at ¶ 24). Thus, Plaintiffs seek to hold Dollar Tree strictly liable for the sale of the subject tweezers. In addition, Plaintiffs claim that Dollar Tree "was also negligent and careless in selling this product without any warnings or instructions and without alerting customers to the potential dangers of button batteries." (Id. at ¶ 25).

On January 14, 2014, Dollar Tree filed a third party complaint against Third Party Defendant Dollar Connection, Ltd. ("Dollar Connection"), seeking indemnification and contribution from Dollar Connection in the event Dollar Tree is found liable to Plaintiffs on their underlying claims. [ECF No. 37]. Dollar Connection filed a motion to dismiss Dollar Tree's third party complaint for failure to state a claim [ECF No. 41], which was ultimately denied by Memorandum Order of District Judge Cathy Bissoon, dated December 15, 2014 [ECF No. 54].

On February 3, 2015, Plaintiffs filed a third party complaint against Dollar Connection [ECF No. 65], and subsequently filed an amendment on April 17, 2015 [ECF No. 90], alleging that Dollar Connection manufactured and/or distributed and/or supplied the subject tweezers to Dollar Tree, through Dollar Tree's importing affiliate, Greenbrier International, Inc. (ECF No. 90, at ¶ 13). As a result, Plaintiff claims that Dollar Connection is (1) strictly liable for Plaintiffs' injuries because the subject tweezers "were dangerous and defective in that they contained button batteries, they failed to restrict access to the button batteries, failed to display or contain or include appropriate warnings or instructions, and failed to adequately protect and hold the button

batteries (ECF No. 90, at ¶ 39); and (2) is liable for negligence and carelessness in manufacturing, distributing, and/or supplying the subject tweezers without any warnings or instructions as to potential dangers of button batteries (ECF No. 90, at ¶ 40), and in "failing to restrict accessibility of the battery compartment" (ECF No. 90, at ¶ 41).

On May 12, 2015, Dollar Connection filed a [partial] motion to dismiss Plaintiffs' third party complaint, as to Plaintiff's strict liability claims only [ECF No. 91]. Plaintiffs have since filed a response and brief in opposition to Dollar Connections' motion to dismiss [ECF Nos. 97, 98], and Dollar Connection has filed a reply [ECF No. 102]. This motion is now ripe for consideration.

### B. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906

3

(3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

4

**C.     Discussion**

Early in this case, Defendant Dollar Tree filed a motion to dismiss the strict liability claims raised in Plaintiff's first amended complaint [ECF No. 13]. At that time, the law governing strict liability actions in Pennsylvania was in a state of flux and had not yet been settled by the Pennsylvania Supreme Court.[1] Nonetheless, this Court was bound by the Third Circuit Court's predictive holding in Berrier v. Simplicity Mfg., Inc., 563 F.3d 38 (3d Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 553 (2009), that the Pennsylvania Supreme Court would adopt Sections 1 and 2 of the Restatement (Third) of Torts to determine whether an injured, unintended user of a product could recover from the product's distributor in strict liability.[2] See Lynn ex rel. Lynn v. Yamaha Golf-Car Co., 894 F.Supp.2d 606, 625 (W.D. Pa. 2012) ("When the federal court issuing the prediction is our Court of Appeals, the district courts in this Circuit are to apply its predictive holding to legal questions arising under that particular state law 'unless the state supreme court issues a contrary decision'") (citation omitted).

In general, the Restatement (Third) of Torts incorporates negligence-based foreseeability concepts that are historically absent from Pennsylvania's products liability analysis under the Restatement (Second) of Torts. See Lynn, 894 F.Supp.2d at 628 n.14 (recognizing that "'[the] Restatement (Second)] standard focuses on an intended user making an intended use of the

---

[1] Pursuant to 28 U.S.C. § 1652, this Court is bound to follow the applicable substantive law of the Commonwealth of Pennsylvania, the forum state.

[2] In Covell v. Bell Sports, Inc., 651 F.3d 357, 359 (3d Cir. 2011), *cert. denied*, __ U.S. __, 132 S.Ct. 1541 (2012), the Court noted that the Pennsylvania landscape had not changed and, thus, reiterated that "federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of

product, [whereas the Restatement (Third)] focuses on the foreseeable risks of harm and whether an alternative design could have minimized or eliminated that risk'") (citations omitted). Based on the looser standards of the Restatement (Third), this Court recommended that Defendant Dollar Tree's motion to dismiss be denied, concluding, in part, that Plaintiff's allegations were sufficient to support a claim that "the alleged risk of harm to children posed by the subject tweezers was foreseeable…." (ECF No. 19, Report and Recommendation, at p. 10). This recommendation was subsequently adopted by District Judge Cathy Bissoon by Memorandum Order dated April 8, 2013. [ECF No. 24].

The Pennsylvania Supreme Court subsequently issued an opinion in <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014) that changed the landscape of product liability claims in Pennsylvania. The principal impact of <u>Tincher</u> is twofold. First, the Court overruled the seminal case of <u>Azzarello v. Black Brothers Co.</u>, 391 A.2d 1020 (Pa. 1978), which created a distinct dichotomy between strict liability and negligence claims in Pennsylvania that ultimately led to trial courts "directing that negligence concepts have no place in Pennsylvania strict liability doctrine." <u>Tincher</u>, 104 A.3d at 376. In particular, the Court repudiated the standards enunciated by the <u>Azzarello</u> Court as confusing and impracticable, stating:

> … in a jurisdiction following Second Restatement formulation of strict liability in tort, the critical inquiry in affixing liability is whether a product is 'defective'; in the context of a strict liability claim, whether a product is defective depends upon whether a product is 'unreasonably dangerous.' Yet, *Azzarello* divorced one inquiry from the other: under the *Azzarello* Scheme, the trial court serves as the gate-keeper of one question [whether the product is 'unreasonably dangerous'] with the apparent task of deciding as a matter of law and policy whether a product is even

---

Torts").

> susceptible to a strict liability claim. As a practical matter, the *Azzarello* decision did not indicate at which point of the trial the court should consider the question, nor what pleadings or evidence would be relevant to the inquiry; the Court did suggest, however, that the matter 'd[id] not fall within the orbit of a factual dispute.' 301 A.2d at 1026.

Tincher, 104 A.3d at 380. Thus, Tincher expressly rejected Pennsylvania's "*per se* rule that negligence rhetoric and concepts were to be eliminated from strict liability law…." Id. at 381.

Second, the Tincher Court declined to adopt the Restatement (Third) of Torts to replace the *Azzarello* standards abrogated by its decision, because it "presumes too much certainty about the range of circumstances, factual or otherwise, to which the 'general rule' articulated should apply." Id. at 398. In particular, the Court found that the Third Restatement "would likely impede the principled development" of products liability law and, instead, opted for more of an "incremental approach." Id. at 399. Thus, Tincher effectively nullified the Third Circuit's prediction that Pennsylvania would adopt the Restatement (Third) of Torts, and confirms that Pennsylvania "remains a Second Restatement jurisdiction." 104 A.3d at 399.

Having overruled Azzarello, the Tincher Court was then tasked with defining the scope of Pennsylvania's strict liability law going forward. The Court first made clear that "a person or entity engaged in the business of selling a product has a duty to make and/or market the product … free from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.'" Id. at 384. The Court then held that, to demonstrate a breach of this duty, "a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition'" by showing either that (1) the [product's] danger is unknowable and unacceptable to the average or ordinary consumer [the "consumer expectations standard"], or (2)

7

a reasonable person would conclude that the probability and seriousness of harm caused by the product outweighs the burden or costs of taking precautions [the "risk-utility standard"]." Id. at 335, 385-91. The Court explained that this is a combined test that requires the plaintiff to meet only one of the two standards, which may be pled in the alternative. Id. at 391.

Significantly, although Tincher overruled Azzarello, the Court was very clear that it did "not purport to either approve or disapprove prior decisional law, or available alternatives suggested by commentators or the Restatement, relating to foundational or subsidiary considerations and consequences of [its] specific holdings." Id. at 409-10. In light of this declaration, Dollar Connection has moved to dismiss Plaintiffs' strict liability claims in this case based upon Pennsylvania's prior development and application of the intended use and intended user doctrines in strict products liability cases. See Pa. Dep't of Gen. Services v. U.S. Mineral Products Co., 898 A.2d 590 (Pa. 2006); Phillips v. Cricket Lighters, 841 A.2d 1000 (Pa. 2003); Mackowick v. Westinghouse Electric Corp., 575 A.2d 100 (Pa. 1990). According to these cases, a manufacturer can be held strictly liable "only for harm that occurs in connection with a product's intended use by an intended user…." U.S. Mineral Products, 898 A.2d at 253 (citations omitted).

Applying the intended use and intended user doctrines to this case, Dollar Connection argues that it cannot be held strictly liable for the injuries sustained by the Minor Plaintiff because the subject tweezers were not being used in an intended manner by an intended user; rather, they were being "handled" in an unintended manner by an unintended user, the Minor

Plaintiff's older sibling, who was also a young child.[3] Thus, Dollar Connection asserts that Plaintiff's strict liability claims must be dismissed.

In response, Plaintiffs argue that the intended use and intended user doctrines are no longer viable in Pennsylvania as a result of the Tincher decision. In particular, Plaintiffs contend that the intended user doctrine "is incompatible with the strict liability cause of action in Pennsylvania as described by *Tincher* and Section 402A of the Second Restatement." (ECF No. 97, Plaintiffs' Opposition Brief, at p. 18). The Court disagrees. While the Tincher Court recognized that its decision to overrule Azzarello might have an impact upon subsidiary issues constructed from Azzarello, such as "the proper application of the intended use doctrine," Tincher, 104 A.3d at 409, it refrained from addressing the viability of those issues.[4] Moreover, the "consumer expectations" standard retained by the Tincher Court requires a court to assess an ordinary consumer's expectations by considering a number of factors, including, *inter alia*, "the product's intended use and intended user." Tincher, 104 A.3d at 387. Thus, it would appear that the intended use and intended user doctrines remain viable in Pennsylvania in the context of the consumer expectations standard.

---

[3] The record indicates that the Minor Plaintiff has two older siblings who were 3 and 5 years of age at the time of the incident at issue. (ECF No. 72 at p. 3). The record is unclear which sibling caused the Minor Plaintiff to ingest the button batteries.

[4] It is instructive to note that that the intended use doctrine had already been established in Pennsylvania prior to Azzarello, and is not merely a product of the decisional framework that was abrogated by Tincher. See Salvador v. Atlantic Boiler Co., 319 A.2d 903, 907 (Pa. 1974) ("Our courts have determined that a manufacturer, by marketing and advertising his product, impliedly represents that it is safe for its intended use"). Thus, this Court cannot read Tincher as abolishing such a longstanding legal doctrine without a clear, unambiguous holding to that effect by the Commonwealth's highest court.

That being said, Plaintiffs have alternatively argued that, even if the intended user doctrine still applies, the Minor Plaintiff and/or his older siblings are to be considered intended users of the subject tweezers. This argument is untenable. Plaintiffs acknowledge that the subject tweezers "were by design made for removing splinters from children's fingers and feet." (ECF No. 97, Plaintiffs' Opposition Brief, at p. 19). Yet, Plaintiffs do not allege that the tweezers were being used in such a fashion; instead, Plaintiffs essentially argue that children were foreseeable users of the subject tweezers because the tweezers' light and magnifying glass features made them attractive to children, and children might "be invited to manipulate them by their parents." (Id. at p. 20). However, foreseeability has never been a component of Pennsylvania's intended use and intended user doctrines, nor is it likely to become part of the doctrinal framework, in light of the Tincher Court's refusal to adopt the Third Restatement of Torts' broader strict liability standards.

Thus, it appears that Plaintiffs have failed to state a cognizable strict liability claim based upon the "consumer expectations" standard adopted by Tincher, because the Minor Plaintiff and his older siblings were neither engaged in an intended use of the subject tweezers, nor were they intended users of the product at the time of the incident in question. This, however, does not foreclose Plaintiffs' ability to establish their strict liability claims according to the alternative risk-utility standard adopted by Tincher.

Although Dollar Connection asserts that both the consumer expectations and risk-utility standards require a consideration of the "ordinary consumer" and, thus, incorporate the same intended use and intended user doctrinal analyses performed above, such is not the case. The

Tincher Court observed that, while the consumer expectations standard is articulated from the perspective of the reasonable consumer, the risk-utility standard is articulated more from the perspective of the reasonable seller. Tincher, 104 A.3d at 387. In particular, "[t]he risk-utility test offers courts an opportunity to analyze *post hoc* whether a manufacturer's conduct in manufacturing or designing a product was reasonable, which obviously reflects the negligence roots of strict liability." Id. at 389 (citations omitted). The focus of this standard is best encapsulated by Judge Learned Hand's formula, which "'succinctly captures the common sense idea that products are unacceptably dangerous if they contain dangers that might cost-effectively (and practicably) be removed.'" Id. at 390 (citation omitted). Thus, the Tincher Court recognized that, under the risk-utility standard, "the strict liability cause of action theoretically permits compensation where harm results from risks that are known or foreseeable.… Id. at 404-05.

Here, Plaintiffs have alleged the following:

> 27. The subject tweezers were improperly designed, constructed and manufactured, such that the button batteries could be easily accessed and removed by anyone, including young children.
>
> 28. Multiple alternative designs existed that would have restricted and prevented a child from accessing the battery compartment without impairing its usefulness or making it too expensive to maintain its utility.
>
> 29. Such alternative designs were feasible, available, and would have required no extra cost in manufacturing the tweezers.
>
> \*            \*            \*
>
> 32. Based on the known probability and seriousness of harm caused by products containing button batteries, and the fact that taking basic precautions to this product would require no extra costs, the risk-utility standard shows this product was defective.

11

(ECF No. 90, Plaintiffs' First Amended Third-Party Complaint, at ¶¶ 27-29, 32).

These allegations sufficiently state a cause of action under the risk-utility standard of Pennsylvania's strict liability law, as enunciated by the Pennsylvania Supreme Court in <u>Tincher</u>. Since Dollar Connection has failed to challenge these allegations on any grounds other than its misplaced application of the intended use and intended user doctrines, its motion to dismiss Plaintiffs' strict liability claims should be denied.

## III     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Third Party Defendant's [partial] motion to dismiss Plaintiffs' First Amended Third Party Complaint [ECF No. 91] be denied.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file objections will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
United States Magistrate Judge

Dated: November 5, 2015

cc:     The Honorable Cathy Bissoon
        United States District Judge